**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| BRENDA WICKENS, on behalf of herself and all other plaintiffs similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:19-cv-6100 |
| THYSSENKRUPP CRANKSHAFT CO, LLC | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT AND FOR**
**CERTIFICATION OF CLAIMS PURSUANT TO F.R.C.P. 23 FOR SETTLEMENT**

Plaintiff Brenda Wickens ("Plaintiff"), on behalf of herself and all others similarly situated, for this Unopposed Motion for Preliminary Approval of Class Action Settlement and for Certification of Claims Pursuant to Fed. R. Civ. Pro. 23 for Settlement state as follows:

**I. INTRODUCTION**

Plaintiff seeks preliminary approval of this $894,000 Class Action Settlement that impacts the claims of approximately 792 people against Defendant. After extensive arm's length negotiations and exchange of payroll data, the parties feel that they have reached a fair compromise of the claims.

This case involves two primary allegations: 1.) that Defendant did not correctly compute the regular rate of pay for overtime purposes and, thus, did not fully compensate employees for overtime; and 2.) that Defendant violated the Illinois Biometric Information Privacy Act (BIPA). Defendant denies these allegations, denies violation of any law, and denies all liability. For the reasons below, Plaintiff requests this Court enter an order, in the form attached hereto as Exhibit 1, that (1) grants preliminary approval of the Proposed Class Action Settlement; (2) certifies the

Class for settlement purposes; (3) approves the proposed Notice; and (4) sets a hearing date for Final Approval of Settlement. In support of this motion, Plaintiff states as follows:

## II. OVERVIEW OF CLAIMS

The Plaintiff and putative class are current and former non-union employees of the Defendant.

Plaintiff alleged two claims:

*First*, Plaintiff alleges the Defendant did not properly calculate employees' overtime pay. Specifically, Plaintiff alleges Defendant failed to include all necessary compensation when computing employees' overtime rates of pay, resulting in employees being paid an overtime rate that was too low and depriving them of earned wages in violation of the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL").

*Second*, Plaintiff alleges violations of BIPA for failure to obtain written consents from employees before collecting, retaining, and disclosing employee's biometric information.

## III. SUMMARY OF SETTLEMENT TERMS

A copy of the Parties' Class Action Agreement and Stipulation of Settlement and Release (the "Settlement Agreement") is attached as Exhibit 2. The Settlement creates two subclasses: A.) Wage Class and B.) BIPA Class. For purposes of preliminary approval, the following paragraphs summarize the Settlement Agreement's key terms:

The Defendant agrees to pay a total of $894,000 (the "Gross Settlement Amount") into a Qualified Settlement Fund ("QSF"). The settlement is non-reversionary and no claim forms are necessary. The allocation of the QSF is across the two subclasses and are based upon Defendant's records.

**Subclass A. Wage Class:**

**Members Receive Approximately 215% Of Their Base Damages.**

Subclass A members are receiving on average 215% of their base damages. The Wage claims are based on six different categories of additional compensation that Plaintiff alleges were not captured when calculating the regular rate and overtime rate, such as an attendance bonuses ("Attendance Bonus"), bonuses for working consecutive days ("Sunday Bonus"), and compensation for time spent training ("Tooling U"). Each of these categories would have their own disputes as to whether they should or should not have been included with Plaintiff's overtime calculations. The Class is only discounting two categories that Defendant would have strong defenses against: "Tooling U", and "Lump Sum"[1]. The Class will receive approximately 45% of all available overtime and statutory damages from these two categories. However, the Class will receive 100% of all unpaid overtime, including all statutory damages for the remaining 4 categories of compensation. This means they are getting 79% of all potentially available unpaid overtime and statutory damages. Additionally, Class members are receiving full FLSA liquidated damages and those who worked in Illinois are receiving full statutory penalty damages under the IMWL. On the whole, this results in the Class receiving approximately 215% of the average of their base damages available to them, before attorney fees and costs, administrator fees, and service award.

To provide the Court with an illustrative example: Plaintiff alleged that Class Member #20002847, an Illinois worker, was underpaid $134.41 in base damages for the settlement period post-2018. This is made up of $13.30 in "Tooling U" damages (discounted from $29.75); $116.19 in "Other Paid" damages; and $4.92 in "Lump Sum" damages (discounted from $11.00) This Class

---

[1] At trial Defendants would have argued that "Tooling U" was voluntary training time that would be excluded from compensable time when determining overtime and "Lump Sum" were discretionary bonuses that do not have to be included in regular rate calculations, among other defenses.

member did not have "Attendance"; "Bonus" or "Sunday" bonus damages. After FLSA liquidated damages and IMWL treble and 5% monthly penalty statutory damages, he is receiving an additional $32.37 in "Tooling U" damages (discounted from $72.41); $279.39 in "Other Paid" damages; and $12.78 in "Lump Sum" damages (discounted from $28.59). Thus, this Class Member's gross settlement is $458.95 or, approximately, 341% of his base damages.

**Subclass B. BIPA Class**

**Each Member Is Allocated Approximately $1,000 Before Deductions For Attorneys' Fees and Costs, administrative costs, and Service Award.**

$724,000 is allocated to the BIPA class members--or $1,000--for the 724 currently identified class members. BIPA class members will receive an equal share after the deduction of attorneys' fees and costs, administrative costs, and Service Award.[2]

**Class Members That Opt-Out:**

Any Class Member who opts out will not be entitled to his or her share of the Gross Settlement Amount, and the Administrator will not pay that person his or her share and he or she will not be a part of this Agreement or release any claims.

**Settlement Payment Schedule:** To effectuate this Settlement, Defendant has agreed to make a payment into a Qualified Settlement Fund ("QSF") as detailed in the Settlement Agreement. In summation, Defendant will pay $894,000 into the QSF within 30 days of the Effective Date (the date when the Final Approval Order becomes unappealable, i.e. approximately 30 days from the Final Approval Order.) Attorneys' Fees and Costs, Administrator Costs and

---

[2] If more class members are discovered and the class increases by less than 10%, then the BIPA Class Members will receive their *pro rata* share as settlement payment. If more class members are discovered and the class increases by over 10%, then the Gross Settlement Amount shall increase by $1,000 for each additional class member above 796 BIPA Class Members.

Service Awards will be paid from the QSF within 21 days after the funding of the QSF and Class Settlement Payments will be mailed within 21 days after the funding of the QSF. Appropriate taxes will be withheld from the Settlement Payments.

**Cy Pres**: Remaining funds in the QSF after all distributions and 180 days have passed will be made a Cy Press award to Prairie State Legal Services or some other charitable legal aid organization of the Court's choosing.   No money is reverted back to the Defendant.

**Settlement Administrator Fees and Costs**:  The parties have agreed to use Analytics, LLC as the Settlement Administrator. The Administrator fees and costs are estimated to be $9,508 which will be paid from the QSF.

**Attorney Fees**:  Class Counsel will request one-third of the Gross Settlement Fund as an award of attorney's fees.  Additionally, Class Counsel seeks reimbursement of reasonable actual case-related costs and expenses from the Gross Settlement Amount, including but not limited to the filing fee and other expenses.  One-third of the Gross Settlement Amount is approximately $297,999.70.   Class Counsel anticipates no more than $750 in out of pocket costs.

**Service Award:** Plaintiff seeks $7,500 as a Service Award for the services she rendered to the Class Members.

**Release**:  In exchange for their respective Settlement Payments, the Class (excepting any persons who may choose to opt-out and those that do not cash any part of their Settlement Payments) are providing a release relating to any claims under the Illinois Biometric Information Privacy Act and all claims arising out of unlawful wage and hour practices under Federal or State law as set forth in the Settlement Agreement (Exhibit 2, paragraphs 11.p, 39)).  The Class Members are not signing a general release.

**Notice:** Notice to the Class Members will proceed by mailing through first class mail to each Class Member a copy of the parties' notice that details the approximate specific amount of money that is proposed to be paid to that employee. The Parties' proposed notice to the Class is attached to the Settlement Agreement as Exhibit 1.

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.      Class Action Settlement Approval Process

Approval of class action settlements is typically a three-step process:

(1) preliminary approval of the settlement at an informal hearing;

(2) dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) a "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented. *Manual for Complex Lit.*, at § 21.632–34.

This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the district court to fulfill its role as the guardian of class interests. *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, at § 11.22, *et seq.* With this motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the Settlement.

The purpose of preliminary evaluation of a proposed class action settlement is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.,* § 11.25

at 11-36, 11-37. The decision to preliminarily approve a proposed settlement is in the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"). If so, the court should grant preliminary approval of the settlement, authorize the Parties to give notice of the proposed Settlement to Class Members, and schedule a formal fairness hearing. *Id.*; *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). At the formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

## B. The Criteria for Preliminary Settlement Approval Are Satisfied

Ultimately, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002) (internal citation omitted). At the preliminary approval stage, however, a court's task is to determine whether class settlement is within the range of possible approval. *American Int'l Group, Inc. v. ACE INA Holdings, Inc.*, Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011). Utilizing a five-factor test, a court must consider: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006); *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). Further, a court must not focus on an individual component of the compromise, but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result

of extensive arm's-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). The Settlement Agreement here meets these criteria and clearly falls "within the range of possible approval." *Cook,* 1997 U.S. Dist. LEXIS 1090, at *24-25 (citation omitted).

1.      **Strength of Plaintiff's Case as Compared to the Amount of the Settlement and Allocation of the Settlement Payment**

Here, the BIPA Class Members are allocated approximately $1,000 before deductions for attorneys' fees and costs, administrative costs, and Service Award and Wage Class Members are recovering more than 100% of their base damages and a significant portion of available penalties before accounting for attorney fees and costs, administrator fees and costs and service award.

The BIPA settlement is in-line with other similarly sized BIPA settlements Class Counsel has obtained. The benefits of this Settlement represent an excellent recovery for the Class. The Settlement includes major structural features that benefit Class Members. Class Members will receive direct payments and are *not* required to submit claim forms to receive settlement checks. At trial, Settlement Class Members theoretically stood to recover statutory damages of $1,000 for a negligent violation of the statute. 740 ILCS 14/20. And, while there are certainly arguments that could have been made for multiple or intentional violations of the statute which would have allowed for more in damages, no authoritative case law has yet established such a right and, as the old saying goes, pigs eat well and hogs get slaughtered.  So, the relief provided by the Settlement is outstanding.

Even if substantively considered, the amount of this settlement, here, is outstanding. This Settlement, which provides hundreds of dollars in relief to each Class Member even after expenses

is substantially more than other privacy settlements. *E.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic Communications Privacy Act ["ECPA"] for a $9.5 million *cy pres*-only settlement—amounting to pennies per class member— where $10,000 in statutory damages were available per claim). In the short history of BIPA settlements, class relief has also had a wide range. Some—like those early privacy settlements— have been for zero cash and given the class credit monitoring. *E.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cty. Jun. 6, 2018). Others have required class members to make claims in order to receive relief that is capped at a certain amount. *E.g.*, *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cty.) ($270 per claimant with credit monitoring). *See also Taylor v. Sunrise Assisted Living,* 2017 CH 15152 (Cir. Ct. Cook Cty.) (BIPA settlement for between $40 and $115 per person); *Zhirovetskiy v. Zayo Group, LLC*, 2017 CH 09323 (Cir. Ct. Cook Cty.)(BIPA settlement of $400 per person with reversion); *Zepeda v. Kimpton Hotel & Restaurant Group, LLC,* 2018 CH 2140 (Cir. Ct. Cook Cty.)(BIPA settlement of $500 per person); *Sekura v. L.A. Tans Enterprises Inc*. 2015-CH-16694 (Cir. Ct. Cook Cty.)(BIPA settlement of $125 per person); *Sharrieff v. Raymond Mgmt Co*, 2018-CH-01496(Cir. Ct. Cook Cty.)(BIPA settlement of $500 per person).

A key consideration in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendant's offer. *See Isby*, 75 F.3d at 1199. However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, in deciding whether to preliminarily approve a settlement, a district court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing the plaintiffs' claims. *Id.* A settlement is

fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker,* 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

Plaintiff believes that this case is an excellent result for Class Members. This includes full FLSA damages for each class member without requiring them join any FLSA collective class. Additionally, Plaintiff had not yet obtained class certification. The Defendant had defenses against the BIPA claim, including statute of limitations. There is also a risk that the Illinois Appellate Court currently hearing appeals on these BIPA defenses may decide that BIPA has a short statute of limitations, or decide some other issue that would weaken BIPA claims. It is also possible that the Workers Compensation preemption issue could be further appealed and overturned. Moreover, the Defendant had defenses on the Wage claims that the additional compensation did not need to be included in overtime calculations, that liquidated damages should not be awarded, and that that statute of limitations should not extend as far back. By settling these claims, Plaintiff and class members are assured of a recovery.

## 2. Complexity, Length, and Expense of Further Litigation

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendant would continue to vigorously defend the case. As discovery is in the early stages, significant attorneys' fees and costs would be expended by all Parties in investigating the claims further. Further litigation would

certainly result in dispositive motions, and the possibility of appeals. Additional litigation would increase expenses and would not reduce the risks of litigation to the Settlement Class. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig*., 164 F. Supp. 2d at 1019; *see also Great Neck Capital*, 212 F.R.D. at 409-10. Accordingly, the remaining burden, expenses, and risks for the Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense. "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A*., 293 F.R.D. 467, 474–75 (S.D.N.Y. 2013).

### 3.     At This Preliminary Stage, There is No Opposition to the Settlement

The Plaintiff supports the settlement, as do their Counsel and Defendants. At this preliminary stage, Plaintiff's Counsel is unaware of any opposition to the settlement.

### 4.     Opinion of Counsel

Plaintiff's Counsel is experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. In Plaintiff's Counsel's opinion, the Settlement is fair, reasonable and adequate. It is appropriate for the Court to place significant weight on the endorsement of this Settlement by Class Counsel. Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims, the value of the claims and the time costs, as well as the expense of trials and appeals. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d at 1020; *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983).

"[J]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted).

Defense Counsel is likewise experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. It is likely that should this matter be fully defended up to and at trial, each class member would have *less* proven damages than what they are currently awarded in this settlement. However, fully litigating this matter would likely burden the Defendant with attorney's fees and costs. It is in all parties' best interests to settle this matter to ensure payment to a class.

**5.      The Settlement Was the Result of Arm's Length Negotiations Without Any Hint of Collusion.**

The Settlement was the result of adversarial, arm's length negotiations. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020. Such arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair"). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *See Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996). Here, the Parties negotiated for several months after the exchange and analysis of Defendant's payroll data. The Court should therefore find that the Settlement meets the requirements of and was the result of arm's-length bargaining.

## V. THE PARTIES PROPOSED NOTICE PROGRAM

12

The notice procedure identified in the Settlement Agreement provides proper notice to affected individuals. "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985). The Parties' proposed notice procedure meets the requirements of Rule 23.

## VI. SCHEDULING OF A FINAL APPROVAL HEARING IS APPROPRIATE

The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation. The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e). The Parties request that the Court set a date for a hearing on final approval.

## VII. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

### A. PROPOSED CLASS ACTION DEFINITION

The "Settlement Class" consists of two sub-classes: Subclass 1 ("Wage Class") defined as all non-union current and former employees of Defendant who worked overtime and earned bonuses and/or took "Tooling U" training courses from September 11, 2016 through the date of preliminary approval; and Subclass 2 ("BIPA Class") defined as all non-union current and former employees working for Defendant who used timekeeping technology which utilized a scan of employee's hands and/or fingers or anything that allegedly could be covered as biometric identifiers or biometric information under the Illinois Biometric Information Privacy Act in the

State of Illinois between September 11, 2014 and the date of preliminary approval. The Class is ascertainable, and it consists of those persons who are identified on Exhibit 2 to the Settlement Agreement.

**B. The Plaintiff Class Meets All Four Requirements of FRCP 23(a).**

**a. Numerosity**

The Federal Rules of Civil Procedure require that the class be so large as to render joinder of all parties impracticable. Fed. R. Civ. P. 23(a)(1). There are approximately 792 Class members and this easily meets the numerosity standard. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)(concluding that "generally . . . more than forty [is] adequate"); *see Fletcher v. ZLB Behring LLC,* 245 F.R.D. 328, 336 (N.D. Ill. 2006)("[C]ourts in this circuit have concluded that 40 or more class members is generally sufficient to fulfill the numerosity requirement."); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir.1967) (18 members sufficient). As such, the numerosity standard is met.

**b. Commonality**

The second requirement for class certification, as set forth in Rule 23(a)(2), is that there must be "questions of law or fact common to the class." "[E]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2562 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556. "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified. *Spano v. Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). The common questions here is whether Defendant violated the Illinois

Biometric Information Privacy Act and whether Defendant improperly calculated wages when paying overtime to employees.

### c. Typicality

Plaintiff meets the typicality requirement because all employees, including the named Plaintiff, were under the same policies set by Defendant. "[T]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011); *see also Rosario*, 963 F.2d at 1018 ("we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)"). Defendant utilized the alleged policies and practices for Class member's timekeeping and uses the same policy of calculating pay for overtime purposes. As such, Plaintiff's claims arise out of the same course of conduct and the same payment practices.

### d. Adequacy

The final requirement for class certification under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." In the instant case, Plaintiff was an employee of Defendant and alleged she suffered from overtime underpayments and was under the same allegedly unlawful practice as all other non-exempt employees. She has been cooperative throughout this litigation. As the Supreme Court has noted, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, Plaintiff's claims pose no conflicts whatsoever with those of the other Class members because her claims and those of the entire Class turn on the existence and implementation of certain of Defendant's wage policies, which are alleged to have improperly calculated the regular rate for

overtime purposes. Therefore, Plaintiff's financial interests are not in conflict with those of other Class members. Adequate representation also requires competent and experienced counsel able to conduct the litigation. *Amchem*, 521 U.S. at 625; *Eggleston*, 657 F.2d at 896. While experience in class action litigation is a factor favoring counsel's qualification, general litigation skills and federal court experience are also pertinent. Fed. R. Civ. P. 23(g). Plaintiff's counsel has substantial experience in employment litigation and class action litigation and has attached an affidavit in support of this settlement as Exhibit 3.

### E.  Plaintiff Meets the Requirements of FRCP 23(b)(2).

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiff meets the requirements of Rule 23(b)(2).

### F.  Plaintiff Meets the Requirements of FRCP 23(b)(3).

FRCP 23(b)(3) requires a showing that: (1) issues common to the class "predominate" over those affecting individual class members; and (2) prosecuting the litigation as a class action is "superior" to other available methods of proceeding. *Amchem*, 521 U.S. at 615. When making this inquiry, the court must examine the interests of the class members in individually controlling a separate action, the extent and nature of any litigation already commenced by class members, the desirability of the forum and the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(A-D). Considering these factors, both the "predominance" and the "superiority" requirements are met in the present action.

#### a. Predominance

The standard to determine whether common questions predominate is a flexible one, focusing on whether the common issues are a significant enough part of the case that proceeding as a class action

16

makes sense. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623; *see also*, *e.g.*, *Jenkins* v. *Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986)("In order to 'predominate,' common issues must constitute a significant part of the individual cases."); *In re Playmobil,* 35 F. Supp. 2d at 245 ("The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions to render the class action valueless."). Not all questions of law or fact need to be identical as long as there are common questions at the heart of the case. *Hubler,* 193 F.R.D. at 577. The significant issue is whether "the class claims arise out of the same legal or remedial theory." *Id.* The predominance requirement is satisfied. The most significant factual issue is whether Defendant violated BIPA and properly paid its employees. This will boil down to an analysis of whether it collected employee's biometric information without consent and whether overtime rate was properly calculated and whether employees were properly paid.

The only issue in the instant case that could be individual to each class member is damages. But it is well-established that individual damages issues do not defeat a finding that common liability issues predominate under Rule 23(b)(3). *Gomez v. PNC Nationl Bank Assn,* 2014 WL 3640798, 12 c 1274 (N.D. Ill. 2014) (class certification appropriate even if some members did not perform unpaid work because this relates to damages); *Keele v. Wexler,* 149 F.3d 589 (7th Cir. 1998).

### b. Superiority

The specific factors set forth in Rule 23(b)(3) dictate the superiority of this case proceeding as a class action. When inquiring into the matters pertinent to the findings of predominance and superiority, the court must examine the interests of the class members in individually controlling a separate action, the extent and nature of any litigation already commenced by class members, the desirability of the forum and the difficulties likely to be encountered in the management of a class

action.  Rule 23(b)(3)(A-D).

There is no compelling reason to adjudicate over 700 identical lawsuits in separate actions. Because of the uniformity of the factual and legal claims of the Class members, it would be needlessly repetitive if the Class members were forced to prosecute their claims individually.  A class action in the case at bar meets the superiority test of Rule 23(b)(3) because the difficulties and expense of prosecuting this type of litigation would be counterproductive for both parties. With multiple claims, Defendant's legal expenses (owed to attorneys for both sides) could be greater than the overall damages at stake in the class action.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff prays for an order (in the form attached hereto as Exhibit 1):

  i. Granting preliminary approval of the Settlement in this matter;
  ii. Certifying the proposed Class;
  iii. Approving the form and content of the Notice to be sent to Class Members;
  iv. Appointing Plaintiff as Class Representative;
  v. Approving the appointment of Plaintiff-Class Counsel;
  vi. Scheduling a final fairness hearing;
  vii. Granting such other relief as the Court deems appropriate under the circumstances.

Dated: November 9, 2020       Respectfully Submitted,


By: _____/s/ John Kunze_____
    One of Plaintiff's Attorneys

David Fish
Kim Hilton
John Kunze
The Fish Law Firm, P.C.
200 E 5th Ave Suite 123
Naperville, IL 60563
T: 630-355-7590
F: 630-778-0400