IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRENDA WICKENS, on behalf of herself and all other plaintiffs similarly situated,<br>   Plaintiff,<br><br>   v.<br><br>THYSSENKRUPP CRANKSHAFT CO, LLC<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:19-cv-6100 |

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS,
AND INCENTIVE AWARD**

**I. Introduction**

Plaintiff Brenda Wickens ("Class Representative") is a former employee of Defendant Thyssenkrupp Crankshaft Co, LLC ("Defendant"). In this lawsuit, which she filed on September 13, 2019, the Class Representative alleges that Defendant violated: (a) the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL") by failing to properly compute her regular rate of pay for overtime purposes and (b) the Illinois Biometric Information Privacy Act ("BIPA") by collecting, possessing, and disclosing its Illinois employees' biometric data through a finger-scan timekeeping system without following BIPA's written disclosure and consent requirements. 740 ILCS 14/15. The Parties negotiated a class-wide non-reversionary Settlement of $894,000 for 792 individuals. The excellent Settlement Agreement supports Class Counsel's request for one-third of the settlement fund ($298,000) in attorney's fees and $804.38 in costs.

As to the appropriateness of an incentive award, when the Court preliminary approved the settlement, it raised the impact of *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1264 (11th Cir. 2020). As such, Plaintiff has addressed that case in this Motion. In summary, and for the reasons discussed below, *Johnson* should have no impact on the decision of whether to provide Ms. Wickens a service award.

1

## II. Legal Background and Procedural History

As detailed in greater detail in the Motion for Preliminary Approval, Plaintiff's overtime wage claims are based on six different categories of additional compensation that she alleges were not captured when calculating the regular rate and overtime rate, such as attendance bonuses, bonuses for working consecutive days, and compensation for time spent training. This lawsuit also alleges that Defendant collected its employees' biometric data through a fingerprint scan timekeeping system without informing them in writing that it was doing so, without identifying the purpose of the collection, without identifying how long it would retain their data, and without obtaining their informed written consent. 740 ILCS 14/15(b). The lawsuit further alleges that Defendant stored employees' biometric data without establishing and following a biometric data retention and destruction policy, which requires a private entity like Defendant to destroy biometric data once the purpose for collection is complete. 740 ILCS 14/15(a).

Starting in late 2019, the parties began settlement discussions. Thereafter, they exchanged payroll records. Through further negotiations, by September 2020, the parties reached settlement in principal of Plaintiffs' FLSA and BIPA claims. (Exhibits 1) This Court granted preliminary approval of the Settlement on November 12, 2020. A copy of the Settlement Agreement is attached as Exhibit 2.

## III. Class Counsel Negotiated a Settlement Structure that Favors Class Members

The Settlement includes two important structural features that benefit Class Members more. First, Class Members will receive direct payments and are *not* required to submit claim forms to receive settlement checks; checks will be automatically mailed to current and former employees. Exhibit 2, par. 15 (noting that checks will be mailed to Settlement Class members). The Seventh Circuit has addressed claims processes that may depress class member participation and decrease the amount of money class members receive. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782-83 (7th Cir. 2014). Although not required, when, as here, contact information for Class Members is

available, the Federal Judicial Center recommends direct payments to class members without a claims process. *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist, at p.6, available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. This Settlement provides direct payments to all Class Members. *Id.* Second, the Settlement includes no reversion on uncashed checks even if they are not cashed in the 180 period after they are mailed. Instead, if there are uncashed checks, that money will be donated to Prairie State Legal Services instead of going back to the Defendant. (Exhibit 2 par. 16)[1] Although the Seventh Circuit has never held that a "reversion provision" is "per se" unacceptable in a class settlement, *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004), the risk is that a defendant will benefit from class members who do not initially receive a check because they cannot be located or who do not otherwise timely cash their checks.

## IV. Class Counsel are Entitled to Payment of Their Reasonable Attorney's Fees

### A. The Court Should Award Attorney's Fees as a Percentage of the Fund

The Court should award attorney's fees as a percentage of the settlement fund made available to the Class Members. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *see also Boeing*, 444 U.S. at 478.

---

[1] Prairie State Legal Services offers free legal advice to low-income persons and those age 60 and over who have serious civil legal problems and no legal help available. More information is available at: www.pslegal.org

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994) – the favored approach in the Seventh Circuit is to use the percentage of the fund method in common fund cases like this one. "Our court of appeals favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to *ex ante*." *In re FedEx Ground Package System, Inc. Employment Practices Litig.*, 251 F. Supp. 3d 1225, 1236 (N.D. Ind. 2017) (citing *In re Synthoid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003)); *see also McDaniel v. Qwest Commc'ns Corp.,* No. 05 C 1008, 2011 WL 13257336, at *3 (N.D. Ill. Aug. 29, 2011) ("Many courts have found the percentage-of-recovery method provides a good emulation of the real-world market value of attorneys' services provided on a contingent basis.").

It is especially appropriate to use a common fund approach in cases based on fee shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . . ." *Skelton*, 860 F.2d at 256; *accord Florin*, 34 F.3d at 564. Here, the Settlement releases Class Members' statutory claims to fees.

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method. First, the percentage of the fund method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful churning of the file to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 789-90 (7th Cir. 2001). Where attorneys' fees are limited to a percentage of the total, "courts can expect attorneys to make cost efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid*

*Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

Second, the percentage method preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"); *Gaskill*, 942 F. Supp. at 386 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (fee requests "should not result in a second major litigation")). Courts in this district routinely apply the percentage method to common fund settlements and have noted the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making). As the Second Circuit has explained, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citation omitted).

**B. The Market for Legal Services Supports Plaintiff's Request.**

In deciding the fee to award in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton*, 504 F.3d at 692-94, *citing In re Synthroid Mktg. Litig.,* 264 F.3d at 718 (collecting cases)). The Seventh Circuit has held that "[a]lthough it is impossible to know *ex post* exactly what terms would

have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. Aon Corp.,* 415 F.3d 597, 599 (7th Cir. 2005). The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir. 1986) ("[w]hen the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original). In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff*, 786 F.2d at 325; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 333 (3d Cir. 1998).

Here, prior to filing the Complaint, Class Counsel executed a fee agreement with the Class Representative that entitled Class Counsel to attorney's fees equal to 40% of any recovery (Exhibit 1) but Class Counsel has elected to only seek one-third. Because the Parties negotiated an attorneys' fees arrangement at the start of the litigation, the presumption of market-rate reasonableness applies. *See Briggs v. PNC Financial Services Group, Inc.,* No. 1:15-cv-10447, 2016 WL 7018566, at *4 (N.D. Ill. Nov. 29, 2016). Class Counsel is seeking one-third of the common fund plus its litigation costs and the Class Representative's requested service award of $7,500. This percentage is consistent with the low end of standard contingent fee awards in the Northern District of Illinois. *See Dobbs v. DePuy Orthopaedics, Inc.,* 885 F.3d 455, 459 (7th Cir. 2018) ("The typical contingent fee is between 33 and 40 percent") *citing Gaskill v. Gordan,* 160 F.3d at 361, 362 (7th Cir. 1998); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingency fee ranges from 33 1/3% to 40% of the amount recovered)*; Prena v. BMO Fin. Corp.,* No. 15 C 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (contingency of 33-40% is typically charged in FLSA

cases); *In re Diary Famers of Am., Inc.,* 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) (the usual range of contingent fees is between 33 and 50 percent); *McDaniel,* 2011 WL 13257336, at *4 ("[T]he real-word market range for contingent fee cases is 33% to 40%.").

## C. The Risk of Non-Payment Supports the Requested Attorney's Fee Award

Class Counsel's decision to seek the market rate is also reasonable in light of the significant risks of nonpayment that Class Counsel faced. At the outset of the litigation, Class Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Class Representative. *Taubenfeld,* 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees).

Class Counsel took this case on a contingent fee basis and assumed the risk that they would receive *no* fee for their services. Exhibit 1. *See Sutton*, 504 F.3d at 693-94 (7th Cir. 2007) ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Here, Class Counsel faced risk in establishing that class treatment was appropriate and proving class liability. Defendant would likely have asserted additional defenses, including that employment-based BIPA claims are preempted by the Workers' Compensation Act (that issue was on in the Illinois appellate court when the settlement was negotiated), that Defendant's alleged violations of BIPA were not "negligent," and that the applicable statute of limitations is one or two years, not five years. Even if Plaintiff prevailed on these issues, she risked losing in a battle of the experts who would testify over whether Defendant's technology captures "biometric identifiers" or "biometric information" under BIPA. There is no controlling authority on any of these defenses and the litigation would have been protracted and expensive. Given these risks, Class Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

Class Counsel's fee request should be approved because it is reasonably based on the market rate. No further showing or analysis is needed. *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.,* 251 F. Supp. 3d at 1243 ("A lodestar cross-check … isn't encouraged in this circuit."); *Wright v. Nationstar Mortgage LLC,* No. 14 C 10457, 2016 WL 4505169, at *17 (N.D. Ill. Aug. 29, 2016) (courts can skip a lodestar check); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n.27 (N.D. Ill. 2011) ("use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive"). This is because the recovery for Class Members is substantial, the entire Net Settlement Amount is available to Class Members without the need for them to submit claim forms, and the settlement does not present indicia that it was the product of collusion between the Parties at the expense of Class Members. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("consideration of a lodestar check is not an issue of required methodology"); *In re Dairy Farmers of Am.*, 80 F. Supp. 3d 838, 850 (N.D. Ill. 2015) ("For attorneys who are arguing for a percentage-of-the-fund fee award, any delineation of hours is seemingly unnecessary . . . ."). Although courts occasionally review counsel's lodestar as "a cross-check to assist in determining the reasonableness of the fee award," *Heekin v. Anthem, Inc.*, No. 05 Civ. 1908, 2012 WL 5878032, at *2 (S.D. Ind. Nov. 20, 2012), the lodestar crosscheck is of limited utility because "[u]ltimately . . . the market controls," *In re Trans Union Corp. Privacy Litig.*, No. 00 Civ. 4729, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009); *Wright,* 2016 WL 4505169, at *17 ("Nor the is the lodestar an accurate representation of the hypothetical market agreement between the plaintiffs and their attorneys"). As explained above, because Class Counsel's substantial work to date has "bought" a significant recovery for Class Members, the Court need not analyze Class Counsel's lodestar.

The benefit the Settlement provides Class Members is excellent: for the BIPA claim the settlement provides for $1,000 gross and approximately $646.80 net per Class Member. For the overtime/wage claims, Plaintiffs are receiving an average of approximately 215% of their base

damages for the overtime claim. [See Doc. #43] As to the $1,000 gross recovery on the BIPA claims (which constitutes the vast majority of the relief) the per Class Member amount compares favorably to some other state court BIPA settlements that have received final approval and is consistent with what other judges in the Northern District of Illinois have approved:

| Case | Judge | Approximate Class Size | Per Person | Attoreys' Fees | Incentive Award |
|---|---|---|---|---|---|
| *Dixon v. The Wash. & Jane Smith Home*, 1:17-cv-8033 (N.D. Ill. Aug. 20, 2019) | Kennelly | 1,378 | $1,085 or $768 gross[2] | 1/3rd of gross | $10,000 |
| *Kiefer v. Bob Evans Farms, LLC*, 17-L-12 (Tazewell Cnty. Feb. 18, 2020) | Kouri | 1,501 | $964 gross[3] | 1/3rd of gross | $7,500 |
| *Marshall v. Life Time Fitness, Inc.*, 17-CH14262 (Cook Cnty. July 30, 2019) | Tailor | 6,000 | $270 net[4] | 1/3rd of gross | $5,000 |
| *Zhirovetskiy v. Zayo Group, LLC*, 17-CH09323 (Cook Cnty.) Apr. 8, 2019 | Flynn | 2,200[5] | $450 gross[6] | 40% of gross | $10,000 |
| *Jones v. CBC Restaurants Corp, dba Corner Bakery*, 19-cv-6736 (N.D. Ill 2020) | Guzman | 4,053 | $800 gross | 1/3 of settlement fund | $7,500 |
| *Martinez v. Nando's Restaurant Group, Inc.*, 2019-cv-7012 (N.D. Ill. 2020) | Ellis | 1,427 | $1,000 gross | 1/3 of settlement fund | $7,500 |

---

[2] Class members in the potential two-year potential limitations period (837) received the larger number ($1,085) and those outside of the potential two-year but inside the potential five year limitations period (541) received the smaller award ($768.12). In this settlement, money from uncashed checks was returned to Defendant.

[3] In this settlement, money from uncashed checks was returned to Defendant.

[4] This settlement included a claims process and also included dark web monitoring the parties valued at $130 per class member.

[5] This is the approximate class size according to the settlement agreement.

[6] This settlement included a claims process, which allowed $490,000.00 of the gross settlement to revert back to the defendant if unclaimed during the claims process. By contrast, in this matter there is no claims process.

Nor will Class Members be required to provide a general release to participate in the Settlement—the release is limited to BIPA and wage claims. [Doc. #43-2, par. 11(q)] The absence of a general release exemplifies the results achieved for Class Members. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999) (noting the limited, rather than general, release as further evidence of an exceptional result in favor of class members).

Thus, based upon the negotiated fee agreement in this case, the normal rate of compensation in similar cases, the risk Class Counsel undertook in engaging in this litigation, and the excellent result achieved for Class members, Class Counsel is entitled to reasonable attorney's fees of one-third of the fund and reimbursement of costs.

## VI. An Incentive Award is Appropriate For Ms. Wickens.

Plaintiff requests a $7,500 incentive award for Ms. Wickens' participation in this case—she was instrumental to this case and it is because of her bravery that 791 of her co-workers will get a substantial payment. Exhibit 1.

In employment-related class action, service awards are particularly appropriate because it is common for prospective employers to do background checks on employees that reveal that they sued a past employer. In fact, if you type "Brenda Wickens" into Google, the second result is the "Justia" docket for this case, the third result is a newspaper article that: "Ex-employee suing Danville manufacturer over fingerprint" (with Ms. Wicken's name in the second sentence of the article), and there are other stories about this case that come up with her name.[7] While perhaps retaliation is or should be illegal, it's hard to prove and many employers will think twice about hiring a low-wage worker who cost a prior employer $894,000 because she stood up for the rights of hundreds of co-workers. There is no shortage of people earning $12 to

---

[7] Google search conducted on December 28, 2020.

$15 per hour in Illinois and its easier to move on to the next candidate than to hire someone who will stand up for their rights.

The Court brought up *Johnson v. NPAS Solutions, LLC*, No. 18-12344, 975 F.3d 1244 (11th Cir. Sept. 17, 2020) at the preliminary approval hearing. In *Johnson*, the Eleventh Circuit considered an objection to a class-wide settlement of claims under the Telephone Consumer Protection Act. In a divided ruling, the 11th Circuit ruled that incentive award violated two U.S. Supreme Court cases from the 1800s: *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885). In the dissent, Judge Martin noted that:

> The majority takes a step that no other court has taken to do away with the incentive for people to bring class actions. For class actions, the class must be represented by a named plaintiff, who incurs costs serving in that role. Those costs may include time and money spent, along with all the slings and arrows that accompany present day litigation. By prohibiting named plaintiffs from receiving incentive awards, the majority opinion will have the practical effect of requiring named plaintiffs to incur costs well beyond any benefits they receive from their role in leading the class. As a result, I expect potential plaintiffs will be less willing to take on the role of class representative in the future.

*Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1264 (11th Cir. 2020).

*Johnson* should not negatively impact the Court's award of a service fee. As a starting point, on October 22, 2020, the Plaintiff filed a Petition for Rehearing *En Banc* and on November 9, 2020, the mandate of *Johnson v. NPAS Sols., LLC* was withheld by Order entered in that case. As such, with the mandate withheld, Plaintiff believes it is not appropriate to consider the *Johnson* case at all for precedential purposes.

But even if *Johnson* is eventually upheld, the law in our Circuit is different as the Seventh Circuit allows for incentive awards. *See, In Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 600 (N.D. Ill. 2011)(Dow, J.)(noting that "with respect to incentive payments, the Seventh Circuit has explained that such 'awards are justified when necessary to induce individuals to become named representatives.'"); *Brewer v. Molina Healthcare, Inc.,* 1:16-CV-09523, 2018 WL 2966956, at *2 (N.D. Ill. June 12,

2018)(Dow, J.)(noting that "incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs"); *Soto v. Wings 'R Us Romeoville, Inc.*, 15 C 10127, 2018 WL 1875296, at *2 (N.D. Ill. Apr. 16, 2018)(Dow, J.)(noting that "incentive awards are commonly awarded to those who serve the interests of the class").

Precedent aside, *Johnson's* reasoning is not sound and would certainly result in "potential plaintiffs [being] less willing to take on the role of class representative in the future." *Johnson*, 975 F.3d at 1264 (dissent). As the Petition for Rehearing pointed out, incentive awards are widely permitted and the majority decision is a dramatic departure from a century of jurisprudence. *See, e.g., Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 96 (2d Cir. 2019); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 290 (3d Cir. 2011); *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015); *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 290 (5th Cir. 2017); *Pelzer v. Vassalle*, 655 F. App'x 352, 360 (6th Cir. 2016); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867–68 (8th Cir. 2017); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015); *Chieftain Royalty Co. v. Enervest Energy Instit'l Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Cobell v. Salazar*, 679 F.3d 909, 922–23 (D.C. Cir. 2012).

A copy of the Petition for Rehearing *en banc* is attached hereto as Exhibit 3. As detailed therein, the outdated law relied upon by the 11th Circuit simply is not applicable in today's class action environment. Ms. Wickens stood up to an enormous company—the Defendant is a subsidiary of Thyssenkrupp AG, a German multinational conglomerate that is divided into approximately 670 subsidiaries worldwide. It is one of the world's largest steel producers; it was ranked tenth-largest worldwide by revenue recently. [Doc. #1, par. 3] Her help in this case was instrumental and she was a devoted class representative; a $7,500 incentive award is appropriate.

## VII. Conclusion

Class Counsel's request for an attorneys' fees award of just under one-third of the common fund, minus Class Counsel's costs, and the requested Service Award, is reasonable based upon the negotiated fee agreement in this case, the normal rate of compensation in similar cases, the risk Class Counsel undertook in engaging in this litigation, and the excellent result achieved for Class members. Therefore, the Court should award Class Counsel attorneys' fees in the amount of $298,000 and litigation costs in the amount of $804.38 and a class representative incentive award of $7,500.

Dated: December 29, 2020　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　By: _____/s/ David Fish_____
　　　　　　　　　　　　　　　　　　　　　　　One of Plaintiff's Attorneys

David Fish
Kim Hilton
John Kunze
The Fish Law Firm, P.C.
200 E 5th Ave Suite 123
Naperville, IL 60563
T: 630-355-7590
F: 630-778-0400