**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRENDA WICKENS, on behalf of herself and all other plaintiffs similarly situated, ) ) ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:19-cv-6100 |
| ) | |
| THYSSENKRUPP CRANKSHAFT CO, LLC ) ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Brenda Wickens ("Plaintiff"), on behalf of herself and all others similarly situated, for this Unopposed Motion for Final Approval of Class Action Settlement states as follows:

**I. INTRODUCTION**

Plaintiff seeks final approval of an $894,000 Class Action Settlement that resolves the claims of approximately 792 people against Defendant, which will resolve 1.) Fair Labor Standard Act (FLSA) and Illinois Minimum Wage Law (IMWL) allegations that Defendant did not properly compensate employees for overtime and 2.) allegations that Defendant violated the Illinois Biometric Information Privacy Act (BIPA). No objections were raised to the Class Action Settlement and only one person opted out of the settlement. Exhibit 3.

For the reasons stated below, Plaintiff requests that the Court grant final approval of the Parties' Settlement Agreement attached as Exhibit 1 and enter the proposed order attached as Exhibit 2.

1

## II. THE LITIGATION

As previously explained to the Court when it preliminary approved the settlement, this case alleges that Defendants did not correctly compute the regular rate of pay for overtime purposes and, thus, did not fully compensate employees for overtime in violation of the FLSA and IMWL. It also alleged the Defendant violated BIPA by collecting, retaining and disclosing employees' biometric information without prior written consent. Defendant denies these allegations. The parties negotiated this settlement over several weeks and the wage settlement amounts were derived from payroll data produced from Defendant.

## III. SUMMARY OF SETTLEMENT TERMS

A copy of the Parties' Settlement Agreement is attached hereto as Exhibit 1. On November 12, 2020, the Court granted preliminary approval of the Parties' Settlement Agreement. (Dkt. #46) ("Preliminary Approval Order"). The following paragraphs summarize the Settlement Agreement's key terms:

The settlement creates two subclasses: A.) Wage Class, with members defined as non-union current and former employees of Defendant who worked overtime and earned bonuses from September 11, 2016 thorough the date of preliminary approval and whose name or employee ID number appears on Exhibit 2 to the Settlement Agreement; and B.) BIPA Class, with members defined as all non-union current and former employees working for Defendant who used timekeeping technology (as defined in the Class Members definition located in the Settlement Agreement) between September 11, 2015 and the date of preliminary approval. The total amount of the Class settlement is $894,000. As explained in Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award, Plaintiff's Counsel is seeking attorney fees of one-third of the settlement fund (or $298,000), repayment of costs in the amount of $804.38, and a $7,500 service award for

Plaintiff Brenda Wickens.

**Settlement Allocations:**

**Wage Class:** $170,000 is allocated to Wage Class members. Wage Class members are receiving on average 215% of their base damages. The Wage Class members are allocated payments based on the overtime hours they actually worked and the various categories of additional compensation they actually received. The Wage claims were based on six different categories of additional compensation that allegedly were not captured when calculating employee's regular rate and overtime rate. These include items such as an attendance bonuses ("Attendance Bonus"), bonuses for working consecutive days ("Sunday Bonus"), and compensation for time spent training ("Tooling U") and other additional compensation. Each of these categories would have their own disputes as to whether they should or should not have been included with Plaintiff's overtime calculations. The Class is only discounting two categories that Defendant would likely have strong defenses against: "Tooling U", and "Lump Sum"[1]. The Class will receive approximately 45% of all available overtime and statutory damages from these two categories. However, the Class will receive 100% of all unpaid overtime, in addition to all statutory damages for the remaining 4 categories of compensation. This means they are getting 79% of all potentially available unpaid overtime and FLSA and IMWL statutory damages. Additionally, Class members are receiving full FLSA liquidated damages (an amount equal to the base overtime damages) and those who worked in Illinois are receiving full statutory penalty damages under the IMWL (including treble damages and monthly penalties for the applicable periods). The base

---

[1] At trial Defendants would have argued that "Tooling U" was voluntary training time that would be excluded from compensable time when determining overtime and "Lump Sum" were discretionary bonuses that do not have to be included in regular rate calculations, among other defenses.

overtime damages for the Wage Class were calculated at approximately $79,000, so the recovery of $170,000 represents a recovery of 215% of the Class Members base damages before attorney fees and costs, administrator fees, and service award.

To provide the Court with an illustrative example: Plaintiff alleged that Class Member #20002847, an Illinois worker, was underpaid $134.41 in base damages for the settlement period post-2018. This is made up of $13.30 in "Tooling U" damages (discounted from $29.75); $116.19 in "Other Paid" damages; and $4.92 in "Lump Sum" damages (discounted from $11.00) This Class member did not have "Attendance"; "Bonus" or "Sunday" bonus damages. After FLSA liquidated damages and IMWL treble and 5% monthly penalty statutory damages, he is receiving an additional $32.37 in "Tooling U" damages (discounted from $72.41); $279.39 in "Other Paid" damages; and $12.78 in "Lump Sum" damages (discounted from $28.59). Thus, this Class Member's gross settlement is $458.95 or, approximately, 341% of his base damages.

**BIPA Class:** $724,000 is allocated to BIPA class members for the currently identified 724 BIPA class members –who will receive an equal share after the deductions of attorneys' fees and costs, administration costs and service award. Thus, each BIPA Class Member is allocated approximately $1,000 before deductions. After attorney fees and costs, administrator fees and service award, this creates an approximate net BIPA settlement fund of $468,283 or approximately $646.80 per BIPA class member.

This is not a "claims made" settlement. The settlement proceeds will be paid directly to eligible Class Members. No money is reverted back to Defendant, a Cy Press Award to Prairie State Legal Services, or some other legal aid organization of the Court's choosing, will be made for any remaining funds.

Pursuant to the Preliminary Approval Order, the parties' carried out their notice

obligations. The Settlement Administrator timely mailed to each Class Member the Class Notice via first class U.S. mail, postage pre-paid, to each Class Member's last-known physical address as reflected in Defendants' records. Exhibit 3   Plaintiff's Counsel also set up a website where class members could view the settlement documents.

## IV. <u>THE COURT SHOULD GRANT FINAL APPROVAL.</u>

### A. Class Action Settlement Approval Process

Approval of class action settlements is typically a three-step process:

(1) preliminary approval of the settlement at an informal hearing;

(2) dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) a "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34.

This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the district court to fulfill its role as the guardian of class interests. *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, at § 11.22, *et seq.* At the formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. With this motion, the Parties request that the Court take the last step in the settlement approval process by granting final approval of the Settlement.

### B. The Parties Have Satisfied the Requirements of Rule 23 and the Court's Notice Procedures Set Forth in the Preliminary Approval Order.

As to the distribution of notice, in the Preliminary Approval Order, the Court ordered that notice be effectuated as called for in the Agreement, specifically by first-class mail. Rule 23(c)(2)(B) requires the Court to direct the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). As the Supreme Court has held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id.* Where the names and addresses of class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175.

The Settlement Administrator, in fact, mailed to each Class Member the Class Notice via first class U.S. mail, postage pre-paid, to each Class Member's last-known physical address, as reflected in Defendant's records. No Class Member has opted out or objected. Additionally, the notice and other documents were posted on Plaintiff's Counsel's website and this web address was listed on the notice. The Parties' efforts to effectuate notice to the Class meet the requirements of Rule 23(c)(2)(B).

### C. Final Approval is Appropriate Pursuant to Rule 23(E) Because the Settlement is Fair, Adequate, and Reasonable

Ultimately, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002) (internal citation omitted). Utilizing a five-factor test, a court must consider: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the

amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006); *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). Further, a court must not focus on an individual component of the compromise, but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). For the following reasons, the class action settlement is fair, adequate, and reasonable, and not a product of collusion and therefore should be finally approved.

       **1.**       **Strength of Plaintiffs' Case as Compared to the Amount of the Settlement and Allocation of the Settlement Payment**

A key consideration in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendants' offer. *See Isby*, 75 F.3d at 1199. However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 889 (7th Cir. 1985). A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker,* 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

Plaintiffs believe that this case is an excellent result for Class Members because the Wage Class members are, (before accounting for attorney fees and costs, service award and

administrative costs) getting nearly all of the overtime that could have been owed to them. This results in Wage class members receiving, on the whole, 215% of their base overtime damages. Additionally, the BIPA class members are receiving settlement payments exceed many BIPA settlements. In the short history of BIPA settlements, class relief has also had a wide range. Some—like those early privacy settlements— have been for zero cash and given the class credit monitoring. *E.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cty. Jun. 6, 2018). Others have required class members to make claims in order to receive relief that is capped at a certain amount. *E.g.*, *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cty.) ($270 per claimant with credit monitoring). *See also Taylor v. Sunrise Assisted Living,* 2017 CH 15152 (Cir. Ct. Cook Cty.) (BIPA settlement for between $40 and $115 per person); *Zhirovetskiy v. Zayo Group, LLC*, 2017 CH 09323 (Cir. Ct. Cook Cty.)(BIPA settlement of $400 per person with reversion); *Zepeda v. Kimpton Hotel & Restaurant Group, LLC,* 2018 CH 2140 (Cir. Ct. Cook Cty.)(BIPA settlement of $500 per person); *Sekura v. L.A. Tans Enterprises Inc*. 2015-CH-16694 (Cir. Ct. Cook Cty.)(BIPA settlement of $125 per person); *Sharrieff v. Raymond Mgmt Co*, 2018-CH-01496(Cir. Ct. Cook Cty.)(BIPA settlement of $500 per person).

This BIPA $1,000 per person settlement is in line with comparable ones approved in federal court recently. *See, Dixon v. The Wash. & Jane Smith Home*, 1:17-cv-8033 (N.D. Ill. Aug. 20, 2019)(per member BIPA allocation of between $768 and $1,085); *Jones v. CBC Restaurants Corp, dba Corner Bakery,* 19-cv-6736 (N.D. Ill 2020)(per member BIPA allocation of $800 per person); *Martinez v. Nando's Restaurant Group, Inc.*, 2019-cv-7012 (N.D. Ill. 2020)(per member BIPA allocation of $1,000).

Settlement eliminates the risk that class members could recover a lower amount or nothing at all. While the Plaintiffs felt confident in their claims, there remains the prospect that Plaintiffs

8

might not prevail (or, if they prevail, the recovery might be limited to only a lesser amount of damages than was hoped). For instance, Wage Class members are receiving approximately 45% of potential damages from the failure to include "Tooling U" or "Lump Sum" compensation when calculating overtime, but Defendant may have won on these, or other categories, giving class members no damages for these. Moreover, Defendant could have asserted statute of limitation defenses that would have eliminated many class members, or asserted other defenses, that may have eliminated or lessened the claims. In particular, BIPA is the subject of numerous appeals questioning the statute of limitations period, it is possible any one of those could decide it is less than five years, or even only one year, which would greatly decrease the amount of potential class members. Plaintiffs also faced the risk of not being able to certify a class or having a collective decertified as certain issues arose, i.e., whether the additional compensation was excludable from regular rate calculations, whether employees are similarly situated under BIPA, along with the plethora of other defenses that competent defense lawyers (such as those in this case) frequently raise.

Additionally, combining the Wage and BIPA settlements in one settlement and notice has reduced settlement administration because there is only one set of notice mailing and mailed settlement checks, which further benefits both sets of class members.

### 2. Complexity, Length, and Expense of Further Litigation

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendants would continue to vigorously defend the case. Significant attorneys' fees and costs would be expended by all Parties in investigating the claims further. Further litigation would potentially result in further dispositive

9

motions, and the possibility of appeals. This is particularly true given the unique facts presented by this case. Additional litigation would increase expenses and would not reduce the risks of litigation to the Settlement Class. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019; *see also Great Neck Capital,* 212 F.R.D. at 409-10. Accordingly, the remaining burden, expenses, and risks for the Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense. "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 474–75 (S.D.N.Y. 2013).

### 3. There is No Opposition to the Settlement

The Plaintiff supports the settlement, as do Class Counsel and Defendant. Moreover, Class Counsel is not aware of any opposition to the settlement. Class Counsel has not spoken to any class member opposed to settling their claims and receiving payments. The lack of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *6. The Court-approved Settlement Administrator diligently implemented the Notice Plan, and the objection and exclusion deadlines have passed without a single person objecting to the Settlement.[2] That no one objected to the Settlement is powerful evidence of the Class's support for the Settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (finally approving settlement with no objections and noting that "[a]n absence of objection is a 'rare

---

[2] There was only one request for exclusion for a Michael T. Drollinger, he will be excluded from the settlement and will not receive his settlement payment.

phenomenon[]' and 'indicates the appropriateness of the request[]'") (citations omitted); *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (stating that "[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate"). This factors thus strongly supports granting final approval to the Settlement.

### 4. Opinion of Counsel

Class Counsel is experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. In Class Counsel's opinion, the Settlement is fair, reasonable and adequate. See Dkt# 43-3 Declaration of David Fish, ¶7-8. It is appropriate for the Court to place significant weight on the endorsement of this Settlement by Class Counsel. Class Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims and value of the claims and the time costs, as well as the expense of trials and appeals. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d at 1020; *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). "[J]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted); *Grove v. Principal Mutual Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001).

The Fish Law Firm has been Class Counsel for numerous BIPA and Wage Settlements. See Exhibit 3. Courts in this District have found that the Fish Law Firm are qualified class counsel. *See Pietrzycki v. Heights Tower Serv., Inc.*, 197 F. Supp. 3d 1007, 1019 (N.D. Ill. 2016)

(appointing David Fish class counsel after noting his "litigation experience in labor/employment cases as well as class actions[,]" as well as his and his firm's diligence). Furthermore, the Fish Law Firm is serving as counsel in many pending BIPA and wage cases and therefore has extensive experience in these fields. Put simply, and for the reasons discussed in detail above, Class Counsel believe that the Settlement provides outstanding monetary and prospective relief without the uncertainty and delay that years of litigation would bring. That certainly in the best interests of the Settlement Class.

### 5. The Settlement Was the Result of Arm's Length Negotiations Without Any Hint of Collusion

The Settlement was the result of adversarial, arm's length negotiations over several months. Importantly, this involved independently negotiating both the overtime wage and BIPA issues and included analyzing potential damages from payroll date produced by Defendant. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020. Such arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair."). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *See Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996). The Court should therefore find that the Settlement meets the requirements of and was the result of arm's-length bargaining.

## **CONCLUSION**

For the foregoing reasons, the Court should grant final approval of the Settlement and enter the proposed order.

Dated: January 15, 2020

Respectfully Submitted,

By: /s/ John Kunze
One of Plaintiff's Attorneys

David Fish
John Kunze
The Fish Law Firm P.C.
200 E. 5th Avenue, Suite 123
Naperville, IL 60563